MISSOURI RIVER, FT. S. & G. R. CO. (ARMSWORTHY v.). See Case No. 550.

MISSOURI RIVER, FT. S. & G. R. CO. (STROUD v.). See Case No. 13,547.

MISSOURI VAL. LIFE INS. CO. (CLIPPINGER v.). See Case No. 2,901.

MISSOURI VAL. LIFE INS. CO. (SMITH v.). See Case No. 13,083.

---

## Case No. 9,655.

'MISTON v. LORD.

[1 Blatchf. 354.][1]

Circuit Court, S. D. New York. Oct. Term, 1848.

AFFREIGHTMENT—RETURN TO SHIPPING PORT — SALE OF CARGO—AUTHORITY OF MASTER.

1. A., by his agents, chartered a vessel for a voyage from New-York to Havre, the freight to be payable on the arrival and discharge of the cargo at Havre. The vessel sailed, but encountered a storm and sprang aleak, and put back to New-York. The cargo was discharged.

1 [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

and, on a survey, was found to be so much damaged by salt water, that it would not bear transportation, nor would its shipment have been safe for the vessel or crew. A.'s agents refused to interfere with it, and the master sold it at auction. In an action by A. for the nett proceeds: Held, that the owner of the vessel was not entitled to retain anything for freight.

2. Whether the underwriters would be liable for the freight, quere.

3. In cases of necessity happening during a voyage, the master is, by law, created the agent for the benefit of all concerned, and his acts done under such circumstances, in the exercise of a sound discretion, are binding upon all parties in interest.

[Cited in The Ann D. Richardson, Case No. 410. Distinguished in Moore v. Hill, 38 Fed. 334.]

4. The voluntary acceptance of the cargo by the shipper at an intermediate port would have the effect to charge him with a ratable portion of the freight.

5. But, where the port of distress and of acceptance of the cargo is the port of shipment, and no part of the voyage has been performed, the shipper ought not to pay freight.

6. Where the voyage is broken up, no more for the benefit of the cargo than for the benefit of the ship owner, and the shipper has derived no benefit under his contract, he ought not to pay any freight.

[Cited in The Ann D. Richardson, Case No. 410.]

7. The master having failed to deliver the cargo according to the bill of lading, and there having been no waiver of performance by the shipper at the port of distress, the owner of the vessel is not entitled to freight, notwithstanding the damaged state of the cargo justified its sale by the master at the port of distress.

[Distinguished in Leckie v. Sears, 109 Mass. 428.]

8. The agency of the master on behalf of the shipper at the port of distress, arising out of the necessities occasioned by the disaster, is limited to the sale of the cargo.

This was an action to recover a sum of money in the defendant's hands, under the following circumstances. The plaintiff shipped a cargo of flour, wheat and corn in bulk, hides, &c., from New-York to Havre, under a charter party, entered into on the 19th of December, 1846, by his agents, and the defendant as agent of the owners of the barque Dana, the freight to be payable on the arrival and discharge of the cargo at the port of delivery. The bills of lading bore date the 16th and 23rd of January, 1847. The plaintiff resided in France and the cargo was purchased and shipped by the house of Marret & Robert of New-York, his agents for that purpose. The vessel sailed on the 27th of January, and, after being out a few days, was overtaken by a violent storm, which crippled her and caused her to spring aleak, so that, notwithstanding a portion of the cargo was thrown overboard, the damage to her was so serious that the captain was obliged to put back to New-York, where he arrived on the 10th of February. It became necessary to discharge the remaining cargo for the purpose of repairing the vessel, and, on a survey, the cargo was found to be so much damaged by the salt water, that it would not

bear transportation, nor, in its condition, would the shipment have been safe for the vessel or crew. The shippers, Marret & Robert, refused to interfere, having no authority from the plaintiff except to purchase and ship the goods; and the master, under the circumstances, deemed it best, for the interest of all parties concerned, to sell the cargo at public auction. It was sold accordingly, the nett proceeds amounting to $15,789.12. The purchasers, at considerable labor and expense, dried portions of the wheat, so that it was afterwards sold for full price. The greater part, however, was sold as damaged and at inferior prices. The freight upon the cargo, according to the charter party, amounted to $6,344.50. The ship was repaired, and sailed with a new cargo on the 16th of March, on a voyage to Belfast, Ireland; the freight far exceeding that which would have been earned under the charter to Havre. The defendant, as agent of the ship owners, received the nett proceeds of the sales of the damaged cargo, to recover which this action was brought. The defendant claimed a deduction of the whole amount of the freight under the charter party. A verdict was taken for the plaintiff, for the full amount of the nett proceeds, subject to the opinion of the court.

Francis B. Cutting, for plaintiff.
Daniel Lord, for defendant.

NELSON, Circuit Justice. I have looked into all the cases in the books upon this question, both English and American, and am satisfied that the weight of authority is decidedly against the allowance of any freight, under the circumstances of this case, as between the owner and the shipper. Whether the underwriters would be liable for the freight under their policy, it is not necessary to determine. The same conclusion must also be arrived at on principle. By the contract of the parties, the freight was not to be payable until the arrival and discharge of the cargo at the port of delivery. No part of the contract has been performed. There has been no default on the part of the shipper, nor has he done any act dispensing with performance. There is no doubt, that where the cargo is so much damaged that to proceed with the voyage will endanger the safety of the ship or render the cargo worthless, it is the duty of the master to land and sell it at the port of necessity, in the absence of instructions from the shipper, even though it may have been in a condition to be carried in specie to the port of destination and there landed. In cases of necessity happening during the voyage, the master is, by law, created the agent for the benefit of all concerned, and his acts done under such circumstances, in the exercise of a sound discretion, are binding upon all parties in interest. But the question still arises, whether, in such cases, the shipper is to be subjected to the payment

of freight. The voluntary acceptance of the cargo by the shipper at an intermediate port, will, it is admitted, have the effect to charge him with a ratable portion of the freight. But there is no authority for subjecting him to freight, where the port of distress and of acceptance of the cargo is the port of shipment, and where no part of the voyage has been performed. In several such cases, freight has been denied. What seems decisive of this case, and of the class of cases to which it belongs, is, that admitting the master to be the agent, at the port of distress, of all parties interested, and that he has acted bona fide and for the benefit of all concerned, in the sale of the damaged cargo, yet, inasmuch as the goods were in a condition that would endanger the safety of the ship and the lives of the crew, if they were carried forward, it cannot be said that the voyage was broken up for the benefit of the cargo any more than for the benefit of the ship-owners. Independently of any duty that the master owed to the cargo under the existing calamity, the interest of his owners dictated the breaking up of the voyage; and, it being broken up under those circumstances and for that cause, and the shipper having derived no benefit under his contract, it is difficult to find any principle, legal or equitable, that would subject him to any part of the freight. Judgment for plaintiff.

[See The Ann D. Richardson, Case No. 411.]